CLYDE B. LINVILLE

*v.*

STATE WORKMEN'S COMPENSATION COMMISSIONER, *and*

HAWKS NEST MINING COMPANY

(No. 13860)

Decided July 12, 1977.

*George G. Burnett, Jr.* for appellant.

*Davis & Nesius, K. Paul Davis, P. Thomas Denny* for appellees.

McGRAW, JUSTICE:

In his appeal from the final decision of the Workmen's Compensation Appeal Board, affirming an order of the Workmen's Compensation Commissioner denying him a compensation disability award, the claimant, Clyde B. Linville, contends that the Commissioner and Board erred in refusing to sustain his claim for a total perma-

nent disability award and for a percentage permanent disability award on account of a broken left wrist attributed by him to a coal mining accident. Counsel for the employer submits that claimant's evidence fails to sustain the left wrist injury claim, that the 23 percent permanent partial disability award previously granted to claimant on account of other injuries in the mining accident fully compensated him, and that, if a permanent total disability award is allowed claimant on his record, no further compensation charges should be assessed against this employer but allocated pursuant to provisions relating to the second injury reserve established under W. Va. Code, 23-3-1.

Claimant, age 53 years, married, with an adopted son and foster daughter at home, resides at Powellton, West Virginia. He relates in his testimony that he did not complete the fifth grade in school, that he began working in the mines in 1939, that he served in the United States Navy three and one-half years during World War II, and that he returned to the mines following his military discharge in January of 1946. His first reported mine injury was in 1956—an injury to his left knee for which he received a 7 percent permanent partial disability award. In 1967 a second mine injury, to his right knee requiring surgery, resulted in another 7 percent permanent partial disability award. Another 1967 mine injury, a laceration above the left eye, was found to be compensable, but claimant lost no work time on account thereof and no percentage disability award was entered thereon. He was granted a 2 percent permanent partial disability award for an injury to his face and nose in 1971. In 1972 he was granted a 15 percent disability award for occupational pneumoconiosis. These compensation awards total 31 percent permanent partial disability.

While employed as a roof bolter by Hawks Nest Mining Company at its Doris Mine on March 27, 1972, claimant was injured in a rock fall resulting in a fracture of his back and right leg among other less significant injuries. He claims his left wrist was broken in this injury, but

the record is vague as to any x-ray thereof or recorded treatment therefor at the time. His other injuries in the accident were more serious and were obviously given primary attention. By the Commissioner's order of May 24, 1973, claimant was granted a 23 percent permanent partial disability award. A medical report had recommended 20 percent "on his back and due to the loss of ankle motion" and 3 percent "on his leg and ankle." Neither claimant nor his employer objected to the award at the time.

On May 9, 1974, claimant was examined by Dr. Harold H. Kuhn who, after review of the injuries and lung condition, expressed the opinion in a written report that claimant was totally and permanently disabled. Among other impressions, Dr. Kuhn noted a left wrist deformity "likely due to an old fracture." On written petition, the claim was reopened on June 21, 1974, and further examination of claimant and consideration of his claim were ordered. Dr. Jack Pushkin's report of October 4, 1974, found no basis for increasing the 23 percent award for the recognized injuries in the March 27, 1972, accident, but would allow an additional 7 percent permanent partial disability award for the left wrist injury, identified by claimant with the March 27, 1972, accident, but not x-rayed or treated. By letter order of October 18, 1974, the Commissioner found claimant to have been fully compensated by the award of May 24, 1973, and refused any further award. By letter of October 24, 1974, counsel for claimant protested the Commissioner's order of October 18, 1974, and a series of hearings on the reopened claim followed. At a hearing in Charleston, West Virginia, on April 22, 1975, claimant gave testimony as to his mine employment record and injuries, including the left wrist injury, and was cross-examined thereon. His testimony disclosed that in April of 1975, a few days before the hearing, he had been reemployed by Hawks Nest Mining Company in an outside communications job because of his seniority in mine work and despite his physical disabilities. A hearing at Pineville, West Virginia, on July 28, 1975, was continued because the witness, Dr. George

F. Fordham, did not appear. At a hearing in Pineville on November 10, 1975, Dr. Fordham appeared and testified, and his written report on claimant dated February 20, 1975, was made a part of the record evidence. He reports the left wrist fracture which may be related to "some old injury." His evidence affirmed that claimant was "disabled from gainful employmemt in the mining industry." A further hearing was held at Charleston on January 26, 1976, and the claim was submitted for decision on the record.

The Commissioner, by order of February 26, 1976, affirmed his prior ruling of October 18, 1974, "holding the claimant fully compensated." While the order is brief, it is understood to mean that the prior award of 23 percent permanent partial disability on May 24, 1973 "fully compensated" claimant and that claims for additional disability for the left wrist injury and for total permanent disability were denied. Counsel for claimant timely filed his notice of appeal to the Appeal Board and the Board, by order of November 29, 1976, affirmed the Commissioner's order of February 26, 1976. The Board's opinion affirms its careful consideration of the record and the briefs of counsel and finds the Commissioner's order was not in error. Claimant's appeal to the Court was granted February 28, 2977, has been briefed by counsel for claimant and the employer, and has been submitted for decision.

Counsel for the parties are in substantial agreement on the issues which may be stated as follows:

"1. Whether the evidence establishes that the residuals of the left wrist fracture resulted from the claimant's injury of March 27, 1972; and,

"2. Whether the evidence establishes claimant's eligibility for total permanent disability benefits as contemplated by the provisions of W.Va. Code, 23-3-1; and, if so, what portion of the award is to be charged to the second injury reserve fund and what portion is to be charged to the employer."

The general rule in workmen's compensation cases is that the evidence will be construed liberally in favor of

claimant, but the rule does not relieve the claimant of the burden of proving his claim by proper and satisfactory proof. *Staubs v. Workmen's Compensation Commissioner*, 153 W. Va. 337, 168 S.E.2d 730 (1969). No particular attention appears to have been given to the left wrist fracture in examination reports preceding the Commissioner's order of May 24, 1973, awarding claimant a 23 percent permanent partial disability. Claimant's injuries in the March 27, 1972, accident were obviously extensive, including a broken back, broken leg and head injuries, readily explaining inattention at the time to a broken wrist. Dr. Kuhn's examination report of May 9, 1974, preceding reopening of the claim, states that "lateral x-rays of the left wrist reveal some dorsal deformity of the wrist, most likely due to an old fracture." Dr. Pushkin's examination report of October 4, 1974, notes a fracture of the left wrist and recommended an additional 7 percent disability award. Dr. Fordham's testimony of November 10, 1975, and his written report of February 20, 1975, refer to the left wrist injury. Claimant, in his April 22, 1975, testimony, identifies the left wrist injury with the March 27, 1972, mining accident, the primary basis of the present claim. The total record evidence, particularly the medical evidence coming into the record in more recent time, sufficiently identifies and relates the left wrist injury to the March 27, 1972, accident in an adequate and persuasive manner justifying the Court on judicial review to hold that the Commissioner and the Appeal Board were plainly wrong in failing to grant the separate 7 percent disability award therefor as recommended in Dr. Pushkin's report. The Court recently held in point two of the syllabus in *Dunlap v. The State Workmen's Compensation Commissioner*, ____ W. Va. ____, 232 S.E.2d 343 (1977):

> "If an injured employee provides some evidence to demonstrate that a particular injury did arise from the subject industrial accident, absent evidence which to some degree of certainty attributes the injury to a cause other than the subject accident, it will be presumed to have resulted from such accident."

This claim was reopened on June 21, 1974, when claimant petitioned the Commissioner to grant to him "a second injury life award on the basis of total and permanent disability as a result of orthopedic and pulmonary impairment." Dr. Kuhn's letter report of May 9, 1974, expressed the opinion that claimant "should be considered totally and permanently disabled as a result of these multiple bone injuries as well as the condition of his lungs." Dr. Pushkin's letter report of October 4, 1974, is a reevaluation of claimant's impairments, greatly identified with his rock fall injury of March 27, 1972, mining accident. The Commissioner's ruling of October 18, 1974, "holding claimant was fully compensated", was protested and further hearings were held. The record now embraces the November 10, 1975, testimony of Dr. Fordham and his letter report of February 20, 1975, concluding with the opinion that claimant "would be disabled from gainful employment in the mining industry." In the meantime, through provisions of a contract between the union and the employer and a seniority bidding process, claimant resumed light outside communications work with his last employer, Hawks Nest Mining Company.

The Commissioner's ruling of February 26, 1976, affirmed his prior ruling of October 18, 1974, that claimant was fully compensated. The ruling did not review or comment on the record and evidence incident to the pending claim for a total and permanent disability award to claimant. The Appeal Board's ruling of November 29, 1976, reviews claimant's injury record and compensation awards but, without comment on the further developed evidence record, affirmed the Commissioner's ruling.

The workmen's compensation law is meaningful and significant and each workmen's compensation claim is singularly important to the claimant. The present case involves a claim for total permanent disability. Claimant's testimony in support thereof reviews his record and disabilities. The examination report of Dr. Kuhn and the examination report and testimony of Dr. Ford-

ham substantiate the claim. Dr. Pushkin's examination report and testimony were addressed primarily to claimant's injuries in the one mining accident of March 27, 1972, not to his total disabilities. The Commissioner's ruling of October 18, 1974, appears to be based primarily on Dr. Pushkin's report. The fact that claimant, on his seniority and under contract provisions, bid for and obtained light outside employment should not militate against his claim for total and permanent disability as understood and defined in law. As stated in *Kamensky v. State Compensation Commissioner*, 148 W. Va. 258, at 261, 134 S.E.2d 582 (1964),

> "The claimant's right to permanent total disability rating cannot be defeated merely because he fortuitously returned to work after he was injured and received the same wages ...."

The Court, in point three of the syllabus in *Posey v. State Workmen's Compensation Commissioner*, ___ W. Va. ___, 201 S.E.2d 102 (1973), holds that

> "A claimant is permanently and totally disabled under our workmen's compensation statute when he is unable to perform any remunerative work in a field of work for which he is suited by experience or training. Each case will be considered on the peculiar facts for the reason that what may be totally disabling to one person would only be slightly disabling to another of a different background and experience."

"In 1970, the Legislature amended W. Va. Code, 23-4-6, by adding paragraph (1) thereto, providing as follows:

> "A disability which renders the injured employee unable to engage in substantial gainful activity requiring skills or abilities comparable to those of any gainful activity in which he has previously engaged with some regularity and over a substantial period of time shall be considered in determining the issue of total disability."

In *Gillispie v. State Workmen's Compensation Commissioner*, ___ W. Va. ___, 205 S.E.2d 164 (1974), in syllabus point nine, the Court holds that

"Awards for permanent total disability are to be ascertained by utilizing and aggregating all definitely ascertainable prior impairments to determine if the claimant is, at the minimum, 85% disabled to perform work in a field of employment for which he is suited by experience or training."

Counsel for claimant and for the employer, in their briefs, invite attention to the allocation of compensation charges between the employer and the second injury reserve fund, in the event claimant is granted a total permanent disability award. W. Va. Code, 23-3-1. The Court, in point ten of the syllabus in *Gillispie v. State Compensation Commissioner, supra,* has held

"Once the Workmen's Compensation Commissioner has made a determination that an injured workman is entitled to an award of total permanent disability, the claimant's employer shall be chargeable only for the compensation payable for the current disability rating attributable to the 'second injury' and the employee shall thereafter be paid the remainder of the compensation that would be due for permanent total disability out of a special reserve of the surplus fund known as the second injury reserve."

Upon careful review and consideration of the record in this claim, pursuant to provisions of W. Va. Code, 23-5-4a, the Court finds and concludes that the order and opinion of the Workmen's Compensation Appeal Board are clearly wrong and that claimant is entitled to a 7 percent permanent partial disability award for the left wrist injury attributable to the March 27, 1972, accident when he was employed as a roof bolter by Hawks Nest Mining Company, and that, for the composite of all his injuries arising from industrial employment, claimant is entitled to a total permanent disability award. Accordingly, the order of the Workmen's Compensation Appeal Board, dated November 29, 1976, affirming the order of the Workmen's Compensation Commissioner, dated February 26, 1976, is reversed and this claim is remanded to the Commissioner for an award of permanent disability

benefits to claimant, Clyde B. Linville, consistent with the foregoing opinion allocating and charging the 7 percent permanent partial disability for the left wrist injury to the March 27, 1972, accident and the remainder of the total permanent disability award to the second injury reserve. The Court's decision is certified to the Appeal Board and to the Commissioner pursuant to provisions of W. Va. Code, 23-5-4.

*Reversed and remanded*
*with directions*