MARLIN M. BOGGS

*v.*

SWCC *and* RANGER FUEL CORP.

(No. 14419)

Decided July 13, 1979.

*Atkins & Ross and Edward G. Atkins,* for appellant.

NEELY, JUSTICE:

This is an appeal from an order entered by the Workmen's Compensation Appeal Board which affirmed the Commissioner's order denying appellant's motion for permanent total disability. This case presents two ques-

tions requiring interpretation of the Workmen's Compensation Act: first, whether an artificially induced, collapsed lung constitutes a previous injury as defined in the second injury statute, *W. Va. Code*, 23-3-1 [1947] and 23-4-9b [1971], and second, whether all issues not previously decided can be rised upon a reopening of a claim under *W. Va. Code*, 23-5-1 [1973], 23-5-1a [1939], and 23-5-1b [1939]. The Appeal Board incorrectly concluded that upon a reopening only aggravation and progression can be considered but we do not remand this case for rehearing because only one tenable claim concerning the combined effects of an artificially collapsed lung and pneumoconiosis was raised below and our decision on this issue disposes of all other claims suggested on the record.

In 1974 claimant, Marlin M. Boggs, was granted a 50% permanent partial disability for occupational pneumoconiosis. Shortly after that award claimant requested a reopening for progression or aggravation under *Code*, 23-5-1 [1973] to consider the combined effects of a prior disability together with his occupational pneumoconiosis. In 1949 when claimant had tuberculosis, he had received medical treatment which included a purposely induced, collapsed lung (pneumothorax), an accepted form of therapy at that time. It is uncontested that the combination of the residual effects of the pneumothorax and the occupational pneumoconiosis render claimant totally disabled. During the earlier proceedings which resulted in an award of 50% disability, a pneumothorax was mentioned but its relation to the occupational pneumoconiosis was not discussed. It is that oversight which claimant sought to raise in the subsequent reopening under consideration in the case before us.

When the two disabilities were finally considered together by the Workmen's Compensation Appeal Board the Board decided that since the claimant had requested a reopening for aggravation or progression, discussion should be confined solely to that issue. In this regard the Appeal Board erred, but even if everything which

claimant offered to prove or reasonably could have proven were taken as proven, claimant, as a matter of law, alleged no grounds involving his pneumothorax upon which an award could have been granted. The Occupational Pneumoconiosis Medical Board admitted that during the earlier proceedings which had resulted in a 50% permanent award an etiology concerning the collapsed lung had not been obtained; however, upon this reopening the Medical Board determined that the treatment for tuberculosis was indeed a traumatic event which caused residual effects resulting in total disability. The Appeal Board, however, affirmed the Commissioner and denied a permanent total disability award.

## I

The first issue to be considered is whether accepted medical treatment constitutes an injury. Mr. Boggs sought a reopening in the belief that his pneumothorax was a previous injury which made him eligible for a "second injury" award. Claimant ingeniously argues that since the pneumothorax was a traumatic event with resulting residual effects, he qualifies for a second injury award because he has "a definitely ascertainable physical impairment," under *W. Va. Code*, 23-4-9b [1971]. It is certainly true that claimant has a "definitely ascertainable physical impairment" under *W. Va. Code*, 23-4-9b [1971]; however, that provision must be read *in pari materia* with the provision that the impairment be "caused by a previous injury" under *W. Va. Code*, 23-3-1 [1947]. This Court has consistently held that "such physical impairment must have been caused from an injury and not a disease unless such physical impairment was an occupational disease proved to have been proximately caused by ... employment." *Bannister v. State Workmen's Compensation Commissioner*, 154 W. Va. 172, 176, 174 S.E.2d 605, 607-08 (1970). *See Huff V. State Workmen's Compensation Commissioner*,     W. Va.     , 202 S.E.2d 383 (1974).

In certain jurisdictions it is unclear precisely what type of pre-existing *injury* qualifies a claimant for relief

from the second injury reserve, 2 Larson, *Workmen's Compensation Law*, § 59.32 (1976), but there is no comparable confusion in West Virginia. This Court has always required proof of injury "by accident," *Jordan v. State Workmen's Compensation Commissioner*, 156 W. Va. 159, 191 S.E.2d 497, 500 (1972). The requirements for a noncompensable, qualifying injury do not differ from those of a compensable injury, namely that the previous injury be attributed to "a definite, isolated, fortuitous occurrence." *Adams v. G. C. Murphy Co.*, 115 W. Va. 122, 126, 174 S.E. 794, 795 (1934). Claimant suggests that this Court no longer adheres to the "by accident" requirement since the employee in *Pennington v. State Workmen's Compensation Commissioner*, ___ W. Va. ___, 222 S.E.2d 579 (1976), received an award when he suffered severe back pain while shoveling coal, one of his everyday duties. However, *Pennington*, which was a close case anyway, may be distinguished from the case *sub judice* on the ground that in *Pennington* the employee did not deliberately strain his back, while the pneumothorax sustained by this claimant was an intentionally induced disability incurred in the treatment of an ordinary disease of life, i.e., tuberculosis.

Within the overall statutory scheme of Workmen's Compensation it is not contemplated that a traumatic event which causes a definitely ascertainable physical impairment should be considered outside of the context in which it arose. The pneumothorax was a direct product of tuberculosis; but for the disease there would not be a collapsed lung. Claimant does not argue that he should be compensated for his disease, and we are unable to agree with the claimant's reasoning which separates the disease from the undesirable effects of treatment for the disease. It would be absurd, for example, to compensate a workman who had previously had heart surgery and to deny those same benefits to a workman who merely had a history of heart disease. While this Court recognizes that the pneumothorax and not the tuberculosis caused the disability in the case before us,

we find the treatment and the disease to be inextricably intertwined.

Since it is obviously the intent of the Legislature to encourage, or at least not discourage, the hiring of the handicapped, *McClanahan v. Workmen's Compensation Commissioner*, ___ W. Va. ___, 207 S.E.2d 184, 186 (1974), we might question if we were the Legislature whether it is not inequitable to discriminate between the diseased workman and the injured workman. That, however, has been the design of the Workmen's Compensation system since its inception, and our responsibility is to apply the law. The scope of the Act's application to disease has been narrowly confined to occupational disease and there is no suggestion that the Legislature intended this narrow policy to be broadened by bringing previous disease related disabilities within the scope of the second injury statute.

## II

It is fruitful for us to address the procedural issue raised in this case although the Appeal Board's incorrect analysis of the law did not affect proper disposition on the merits. The Board stated that since the claimant requested reopening for progression or aggravation of his condition he was strictly confined to that issue. Yet the statute does not limit the issues for which a reopening may be granted but simply state that "such application shall disclose cause for further adjustment thereof." *W. Va. Code*, 23-5-1a [1939]. The Act grants the Commissioner broad power to "make such modifications or changes with respect to former findings or orders as may be justified." *W. Va. Code*, 23-4-16 [1978]. The Act specifically establishes two grounds upon which review may be granted: "a progression or aggravation in the claimant's condition, or some other fact or facts which were not theretofore considered by the commissioner in his former findings." *W. Va. Code*, 23-5-1b [1939].

Similarly, our decisions have allowed reopenings in two broad categories: first, a progression or aggravation

of the claimant's condition; and second, allegations concerning aspects of the *original* condition not previously considered. *Harper v. State Workmen's Compensation Commissioner,* _____ W. Va. _____, 234 S.E.2d 779, 783 n. 3 (1977); *Linville v. State Workmen's Compensation Commissioner,* _____ W. Va. _____, 236 S.E.2d 41 (1977). Claimant's petition admittedly requested the hearing on a single ground; however, Workmen's Compensation procedure should be liberally applied to affect the beneficent purposes of the Act since "[i]t is also the policy of this chapter to prohibit the denial of just claims of injured or deceased workmen or their dependents on technicalities." *W. Va. Code,* 23-5-3a [1971]. To deny an amendment to the petition would make formalities for hearings under this statute stricter than the rules of civil procedures. As this Court recognized in *Harper, supra,* "[o]nce the reopening is granted under *W. Va. Code,* 23-5-1a, any party has the right . . . to contest the modification and to fully develop all of the relevant issues." *Harper v. State Workmen's Compensation Commissioner,* _____ W. Va. _____, 234 S.E.2d 779, 783 (1977).

*Affirmed.*

McGRAW, JUSTICE, *dissenting:*

I dissent. The majority opinion misinterprets the Workmen's Compensation law and is devoid of heart. This is not the first time, however, in recent times that the Court has failed to respond to a working man from whom the breath of life has fled as the consequence of an industrial environment to which he was exposed as he worked in the pursuit of his daily bread. *Hudson v. State Workmen's Compensation Commissioner,* No. 14243, W. Va. January 23, 1979, (McGraw, J. dissenting).

In denying Mr. Boggs an award for permanent total disability, the Court looks at the medical history and holds that an artificially induced pneumothorax resulting in a permanently collapsed lung is a "disease" rather than an "injury." It is reasoned that the pneumothorox is a "direct product" of claimant's prior condition of

tuberculosis. While this may be true, it misses the point, and does not properly respond to the issue of whether the pre-existing disability is itself an "injury" as opposed to a "disease."

The evidence is uncontradicted that Mr. Boggs suffered from pulmonary tuberculosis in 1949. In the treatment of the condition, a surgical procedure known as an artificial pneumothorax was employed. This procedure involved injection of air into the pleural space surrounding the affected lung. The result of the treatment was to collapse the lung, the idea being to rest it. In such procedure it is assumed that after the lung heals it may be reinflated. In this case, however, after the lung was collapsed by the surgical procedure, it never again functioned as before the surgery. It is clear that the lung was badly injured as a result of the surgical procedure and not as the result of the ravages of the claimant's disease, tuberculosis.

The Court now avoids the plain language of the second injury statute and rewrites that language by judicial interpretation, *citing Jordan v. State Workmen's Compensation Commissioner*, 156 W. Va. 159, 191 S.E.2d 497 (1970), as authority for the proposition that an "injury" must be caused "by accident." That is not the law of this jurisdiction. In *Jordan,* the Court was dealing with the definition of a compensable injury. The second injury statute contemplates physical impairment "caused by a previous injury, *irrespective of its compensability."* W. Va. Code § 23-3-1 (emphasis added). Therefore, it was not necessary that Mr. Boggs' collapsed lung be an "injury by accident." It need only be an "injury." This Court has previously interpreted the plain language of the Workmen's Compensation statute to define "injury" to include a condition such as that from which Mr. Boggs suffers. Such an interpretation is entirely reasonable, yet today, without rational explanation, the Court takes a divergent course.

To summarize, Mr. Boggs was injured through treatment by a surgical procedure that resulted in incapacity

and disability. He was subsequently exposed to the hazards of coal miner pneumonoconiosis and, according to the doctors, his impairment from that exposure, combined with his "injury", resulted in total disability. Mr. Boggs, the coal miner with pneumonoconiosis, which the Workmen's Compensation statute was intended to benefit, is denied, by this opinion, what is rightfully his—a total disability award under Workmen's Compensation. Mr. Boggs is denied justice.